OPINION
Appellants Betty Haley and Gary Haley (hereinafter "mother" and "father", respectively), appeal the October 5, 1998 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, granting permanent custody of Morgan Haley, their minor child, to appellee Stark County Department of Human Services (hereinafter "SCDHS").
 STATEMENT OF THE FACTS AND CASE
On May 31, 1996, SCDHS filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging Christian Haley (DOB 9/26/86) and Morgan Haley (DOB 9/7/94) to be neglected and/or abused children. The allegations were based upon Christian's revelations father and mother hit him with boards, switches, and plastic baseball bats, and father hit Morgan with a fly swatter. Via Judgment Entry dated May 31, 1996, the trial court ordered SCDHS to take Christian and Morgan into immediate shelter care custody. An emergency shelter care hearing was scheduled for June 3, 1996. Following the emergency shelter care hearing, the trial court granted temporary custody of the children to SCDHS and ordered mother and father to obtain Quest evaluations. SCDHS filed its First Amended Permanent Custody Complaint on June 25, 1996, and a Second Amended Complaint on August 21, 1996. At a hearing conducted on August 19, 1996, mother and father stipulated to the facts contained in the Second Amended Complaint for Permanent Custody, and to a finding of abuse relative to Christian, and a finding of neglect relative to Morgan. The trial court immediately proceeded to the dispositional hearing. During the dispositional hearing, father and mother stipulated to Christian's being placed in the permanent custody of SCDHS. Based upon the guardian ad litem's recommendation and father and mother's stipulation, the trial court granted permanent custody of Christian to SCDHS, and divested mother and father of any and all of their parental rights, privileges and obligations. The trial court continued temporary custody of Morgan with SCDHS. On September 1, 1996, SCDHS filed a case plan relative to Morgan. Pursuant to the case plan, mother and father were to attend Quest for an evaluation, follow all recommendations, and submit to random urine tests; attend Goodwill Parenting classes; and receive psychological evaluations and follow-up counseling; and Morgan and Christian were to receive psychological evaluations and counseling. On April 28, 1997, SCDHS filed a Motion for Permanent Custody of Morgan, asserting neither father nor mother had made any efforts to recognize his or her abusive behavior, to acknowledge any responsibility for the concerns which resulted in the removal of Morgan from their home, and to address and correct those concerns. The trial court conducted an evidentiary hearing on the motion on January 16, 1998, May 4, 1998, May 6, 1998, June 29, 1998, June 30, 1998, and September 18, 1998. At the permanent custody hearing, the State submitted father's records from Quest Recovery Services. The records reveal father has a long history of drug abuse, dating back to 1990. Although father received several assessments, he failed to follow through with the recommended treatment. Pursuant to the case plan, father was required to drop random urine samples. Throughout the two years the case was pending, father dropped only five urine samples, one of which was positive for marijuana. Lynn Gardenhight, a chemical dependency counselor with Quest, testified she worked with father from July through August, 1996. After his initial assessment on July 10, 1996, father was diagnosed with marijuana and alcohol abuse. Gardenhight referred father to a four week Psychological/Education Group, which father completed. Although father admitted to a conviction for drug trafficking conviction and to minimal use of alcohol and marijuana, he responded to questions and comments in a guarded and defensive manner during both the assessment and treatment. The State also submitted mother's Quest records, which like father's records, reveal a long history of substance abuse, dating back to 1991. After her initial assessment in July, 1996, mother was diagnosed with marijuana abuse and referred to the Awareness Group. Due to continued positive urine screens, mother was referred to the next level of treatment, the Insight Group. Mother was subsequently referred to the Intensive Outpatient Program, then the Inpatient Treatment Program as a result of her inability to remain sober and her testing positive for drugs. Because mother failed to follow through with either of the latter programs, her case was closed. Mother denied having used any drugs since 1992. However, throughout the two years the case was pending, mother dropped six urine samples, five were positive for marijuana and one was positive for cocaine. Mother reasoned the positive test results were false positives, caused by her taking a pain medication and an antidepressant. LouHelen Mercier, the Director of Medical Services at Quest and a licensed practical nurse, testified medications such as the pain medication and antidepressant mother took would not result in positive tests for cocaine and marijuana. She explained the accuracy of the CYBA machine, the machine utilized by Quest in examining urine screens, and why it would not give a false positive for cocaine and/or marijuana if such drugs were not present in an individual's urine. Pursuant to the case plan, father and mother were required to attend Goodwill Parenting. Although father attended classes from December 16, 1996, through March 7, 1997, he refused to accept responsibility for the allegations against him, and remained guarded and reserved. Father gave contradictory statements regarding his situation, and became defensive when confronted. Father continually maintained his and mother's parenting problems were the result of the behavior of the children. Father attended 52 of 58 classes, with 2 unexcused absences. Father completed 9 out of 10 of his individual goals, however, the one goal he failed to complete was the writing of a one page statement on the effects his neglect had on his child's life and how he plans to change these effects. According to father and Lynda Temsic, father's parenting instructor, this goal was never completed because father refused to admit he neglected Morgan. With respect to mother, the record reveals she attended Goodwill Parenting classes from March 3, 1997, through May 29, 1997. Mother accepted some responsibility for the events leading to the removal of the children from her home. Mother admitted using marijuana while the children were with her, and admitted she neglected and abused the children as a result of this drug abuse. She also admitted she failed to protect the children from father's severe physical abuse. Mother attended 47 of 50 classes, with 2 unexcused absences. Mother completed 91% of her individual program goals. Dr. Gerald Bello, a psychologist from Human Development and Counseling Associates, conducted psychological evaluations of father and mother. His evaluation of father revealed father did not take any responsibility for the problems with the children, and denied any drug usage. Although father's standardized psychological test results showed he would be competent to regain custody of Morgan, Dr. Bello testified father's history is inconsistent with the test scores and his history indicates an elevation of antisocial characteristics. Dr. Bello explained an individual's established history should carry more weight in determining the person's competency to parent than the individuals psychological test results. Dr. Bello testified father's history calls into question the validity of his personality test results. With respect to mother's psychological evaluation, Dr. Bello noted mother denied any problems, other than the behavioral difficulties of the children. The psychological testing revealed mother suffers from a variety of somatic complaints, with elevations in the area of hypochondriasis, somatic conversion, and depression. These tests also revealed a mild elevation in the areas of antisocial attitude, behaviors, and beliefs. Dr. Bello testified mother is a generally overwhelmed individual, who has difficulty coping and is easily frustrated. He concluded parenting could be a challenge for mother and she would need consistent support in order to parent a child. Dr. Bello recommended ongoing, weekly counseling for mother as well as medication for her depression. Robin Wallace Yeagley, the SCDHS social worker for the Haley family from May, 1996, through February, 1998, testified regarding the supervised visits she oversaw between mother, father, and Morgan. Yeagley testified, when she picked up Morgan for his initial visits, he reacted terribly, screaming and crying. Morgan threw-up on two occasions prior to his visiting mother and father. Additionally, on one occasion, Morgan locked all the doors of his foster family's house in order to prevent Yeagley from entering and taking him to the scheduled visit. Yeagley testified Morgan's behavior with her on all occasions not involving visitations with father and mother was normal. She noted Morgan did not exhibit any behavioral problems during the visits, but would do so directly before and after. She acknowledged father and mother both acted appropriately during the visits, however, mother often did not pay any attention to the child. Norma Thorpe, the SCDHS case worker for the family from February, 1998, through the present, testified regarding her observations during the supervised visits. She noted Morgan became very aggressive after the visits both in his language and his behavior. Jane Slabaugh, Morgan's foster mother, testified regarding his behavior. Slabaugh testified, when Morgan first entered foster care, he constantly washed his hands, was afraid of being burned by fire and cut by knives, and used inappropriate language for a two year old child. Slaubaugh also corroborated Robin Yeagley's testimony regarding Morgan's severe reactions to visitation with father and mother. When Morgan returned from the visits with father and mother, he would appear very angry, grabbing the cat, hitting Slaubaugh's daughter, and shouting. This behavior would last between one and two days after a visit. Dr. Robin Tener, a psychologist with Northeast Ohio Psychological Association, worked with the Haley family in 1991, relative to the case involving mother's daughter, Roxanna, again in 1993, with Christian's initial removal from the home, and through the present case. Dr. Tener explained interviewing Morgan was a very difficult task because he was only 2 — years old at the time of her initial assessment. Her opinions were based upon her observations of Morgan's behavior and consultation with his foster parents. Dr. Tener described Morgan as an anxiety-ridden child, who anticipates abuse from his adult caretakers. The doctor discussed some of the troubling behavior demonstrated by Morgan when he was initially placed in foster care, but noted the developmental and behavioral progress he had made since that time. Morgan began counseling with Dr. Tener in November, 1996, due to his physical reaction to visits with mother and father. Dr. Tener utilized play therapy in these sessions. Morgan's play centered around children who were hungry or wanted to get out of bed. When Morgan played house, he became very aggressive, often throwing the toy children. Morgan avoided discussing the events in his life represented by his play with Dr. Tener by hiding or putting his hands over his ears. Both mother and father testified no problems presently existed in the home or with themselves, and there had never been any problems. Both mother and father denied any drug usage. Mother and father blamed Christian for the problems in the home, the removal of the children from the home, and the failure of Morgan to be returned to the home. Dave Ferrell, the guardian ad litem, recommended permanent custody of Morgan be granted to SCDHS, based upon Christian's disclosures and, mother and father's history and denial of the problems. Based upon the foregoing testimony, the trial court found the parents had failed to remedy the past problems and Morgan could not at this time or in the immediate future be returned to their home. Thereafter, the trial court conducted a hearing to determine the best interests of Morgan. After the hearing, the trial court found it was in the best interests of Morgan to divest mother and father of all of their parental rights, responsibilities, and obligations, and to grant permanent custody to SCDHS. This decision was memorialized in a Judgment Entry dated October 5, 1998. It is from this judgment entry mother and father appeal, raising as their sole assignment of error:
 THE RULING OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF MORGAN HALEY TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Herein, mother and father raise manifest weight and sufficiency of the evidence claims relative to the trial court's granting permanent custody of their minor child, Morgan, to SCDHS, and finding it was in the child's best interests to do so. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. The relevant statute is R.C. 2151.414. That statute provides, in pertinent part:
(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
* * *
In determining the best interest of a child, R.C. 2151.414(D) states:
(D). . . the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We find the tiral court's finding it was in the Morgan's best interests to grant SCDHS' motion for permanent custody is not against the manifest weight of the evidence. Norma Thorpe, the Haley children's caseworker, testified Morgan does not have any physical, mental, or emotional problems. She noted Morgan had been with his foster parents for over two years, and the couple was interested in adopting him. Thus, Thorpe stated her belief the child was adoptable. Thorpe noted, although Morgan cares about mother and father, the child feels very secure and very safe with his foster family, who provide him with a loving environment. However, a best interests determination is not sufficient to award permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found, pursuant to R.C. 2151.414(B)(1), Morgan was not abandoned or orphaned, and could not be placed with mother or father within a reasonable time, or should not be placed with mother and father. The record reveals despite the fact mother and father participated in numerous services and complied with most of their case plans, mother and father failed to substantially remedy the problems causing Morgan to be removed from their home, and, more importantly, failed to acknowledge their responsibility for those problems. As such, we find permanent custody was a proper disposition. Based upon the foregoing, we find the trial court's finding it was in the Morgan's best interests to be placed in the permanent custody of SCDHS is not against the manifest weight or the sufficiency of the evidence. Mother and father's sole assignment of error is overruled.
The judgment entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, J. Wise, P.J. and Edwards, J. concur